UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Key West Division
Case Number:  05-10093-CIV-MARTINEZ-BROWN

ROBERT EGGERS, d/b/a Trident Services,

    Plaintiff,

vs.

CITY OF KEY WEST, FLORIDA,

    Defendant.
_____/

### AMENDED[1] ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant City of Key West's Motion for Summary Judgment **(D.E. No. 53)** and Plaintiff's Motion for Partial Summary Judgment **(D.E. No. 50)**. Plaintiff Robert Eggers ("Plaintiff"), the former owner of a business that provided shuttle service to tourists and residents in Key West, has filed a three-count complaint against Defendant the City of Key West, Florida ("Defendant" or "City"), alleging that the City improperly granted monopoly rights to two private corporations who also provided shuttle services in Key West.  Plaintiff has alleged a violation of his rights under the dormant commerce clause pursuant to 28 U.S.C. § 1983 and two state law claims for conspiracy in restraint of trade and conspiracy to monopolize.  Defendant has moved for summary judgment on these claims and Plaintiff has moved for partial summary judgment.  After careful consideration, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for partial summary

---

[1] This order is amended to reflect the change of the word "applied" on page 8 to "interpreted."

judgment as moot.

## I. Relevant Factual and Procedural Background

In February 1995, Defendant enacted Ordinances 95-4 and 95-5. Ordinance 95-4 and 95-5 granted Conch Tour Train, Inc. ("Conch Tour Train") and Buggy Bus, Inc. ("Buggy Bus"), respectively, a franchise from 1995 through 2015 to operate a sightseeing tour and shuttle service in Key West. It also prohibited the City from issuing any other occupational licenses, granting similar franchises, or passing any similar ordinances and prohibited sightseeing or shuttle service of any other similar type of operation. *See* (D.E. No. 57-2 at 7-18); *see also* (D.E. No. 5 at 5).[2] In 1996, Plaintiff began operating a shuttle service in Key West. (D.E. No. 58 at 1). Plaintiff initially provided shuttle services with vans but he eventually purchased several passenger buses, ranging in capacity from twenty-seven to thirty-five passengers. *Id*. at 2-3. While Plaintiff was always in competition with Conch Tour Train and Buggy Bus, by 1998 or early 1999 when Plaintiff purchased his first passenger bus, Plaintiff's business was directly competitive with the services offered by Conch Tour Train and Buggy Bus. *Id*. at 2.

Defendant initially licensed and tolerated Plaintiff's business. However, Plaintiff states that "[b]eginning in 1998 and continuing through the time when . . . [he] stopped operating the business in mid-2003, the City conducted a campaign to force . . . [him] out of business and thereby eliminate a competitive threat" to Conch Tour Train and Buggy Bus. *Id*. at 3. Plaintiff alleges that such harassment included stopping his vehicles and detaining drivers and passengers,

---

[2]Neither party has provided the Court with a copy of Ordinance 95-4; however, the parties do not dispute the existence of this ordinance or its contents.

issuing baseless traffic citations, and passing regulations that made it more difficult for Plaintiff to operate. *Id*. at 3-4.

On January 4, 2000, Defendant enacted Ordinance 00-01. (D.E. No. 56-19). This ordinance amended Defendant's Vehicle for Hire Ordinance to include regulations for "Contract Vehicle for Hire (CVH) licenses," which applied to vehicles holding fewer than fourteen passengers. *Id*. at 2-3. This ordinance also provided that a passenger vehicle for hire with a capacity in excess of fourteen passengers was "prohibited to conduct business on the streets of Key West, unless it is a licensed sight-seeing vehicle, a vehicle in the stream of interstate commerce, a city-operated bus, or a licensed vehicle whose owner holds a franchise granted by the city commission of the City of Key West." *Id*. at 4-5.

Plaintiff was issued four CVH licenses for his vans. (D.E. No. 58-2 at 4). With regard to his buses, Plaintiff states that although he "did not expect to be successful" as Conch Tour Train and Buggy Bus had the exclusive franchise agreements with Defendant, he hired an attorney to draft a franchise agreement for his business, which was presented to the City Commission in early 2000. (D.E. No. 58-2 at 4). On February 15, 2000, the City rejected Plaintiff's application for a franchise stating that it was prohibited from granting a franchise to any shuttle operator other than Conch Tour Train and Buggy Bus. (D.E. No. 56-20 at 9-10); (D.E. No. 58-2 at 4). The City also rejected Plaintiff's argument that the use of his buses to transport out-of-state visitors should be permitted under the ordinance's interstate commerce exception. (D.E. No. 58-2 at 4). As a result on March 1, 2000 Plaintiff's shuttle bus service ceased to exist. (D.E. No. 56-2 at 28-29); (D.E. No. 56-5 at 11-12); (D.E. No. 58-2 at 4). Plaintiff continued to operated his business using only vans; however, the business became smaller and less profitable. (D.E. No.

56-5 at 12); (D.E. No. 58-2 at 5).

Plaintiff alleges that the City's campaign of harassment continued into 2003 and "the number of clients who were willing to put up with the City's interference shrunk, as did the number of drivers who were willing to put up with the interference." (D.E. No. 58-2 at 5). In mid-2003, Plaintiff ceased operating his business and began disposing of the assets of the business. (D.E. No. 58-2 at 5). In 2004, Plaintiff became a teacher at Key West High School, a position he still retains today. (D.E. No. 58-2 at 5).

On August 25, 2005, Plaintiff filed suit against Defendant, Conch Tour Train and Buggy Bus in the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County. (D.E. No. 1 at 9). On September 7, 2005, Defendant removed this action to this Court and this case was assigned to the Honorable Shelby Highsmith. (D.E. No. 1 at 1). On October 3, 2005, Plaintiff filed an Amended Complaint. (D.E. No. 5). This Amended Complaint contained three Counts. Count I was asserted against Defendant for a violation of the dormant commerce clause pursuant to § 1983. Counts II and III were asserted against Defendant, Conch Tour Train, and Buggy Bus. Count II alleges conspiracy in restraint of trade in violation of section 542.18, Florida Statutes, and Count III alleges conspiracy to monopolize in violation of section 542.19, Florida Statutes. Plaintiff also alleges that a number of his claims were previously adjudicated in the case *City of Key West v. Duck Tours Seafari, Inc.* where the state court found that Ordinances 95-4 and 95-5 granted monopoly rights to Conch Tour Train and Buggy Bus and that the franchise agreements with these two entities violated the commerce clause as they discriminated against interstate commerce and constituted an unreasonable restraint of trade. *See City of Key West v. Duck Tours Seafari, Inc.*, 972 So. 2d 901, 903 (Fla. 3d DCA 2007).

On July 10, 2006, Judge Highsmith granted Conch Tour Train and Buggy Bus's motion to dismiss, finding that these entities were immune under the *Noerr/Pennington* doctrine and dismissing Conch Tour Train and Buggy Bus as defendants from this case. *See* (D.E. No. 29). On September 29, 2008, Judge Highsmith recused from this action, and it was reassigned to the undersigned. *See* (D.E. No. 66). The remaining defendant, the City, has now moved for summary judgment and Plaintiff has moved for partial summary judgment. The Court now considers these motions.

## II.  Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991).  The moving party  "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324.  Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)).

A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. Analysis

Defendant has moved for summary judgment, arguing that Plaintiff's § 1983 claim in Count I is barred by the statute of limitations and that there is no case and controversy as to Plaintiff's state law claims in Counts II and III.[3]  Plaintiff has moved for partial summary judgment, arguing that pursuant to the doctrine of res judicata the state court's decision in *City of Key West v. Duck Tours Seafari, Inc.* bars Defendant from relitigating the substantive issues in this case, and this case should be limited to causation, damages, and any case-specific defenses Defendant may raise.  For the reasons set forth below, the Court finds that summary judgment should be granted as to all claims in Defendant's favor.  Because the basis of this summary judgment is one of Defendant's case specific defenses, the Court finds Plaintiff's motion for summary judgment is moot.

    A.    **Statute of Limitations and Count I**

First, the Court finds that Plaintiff's § 1983 claim for a dormant commerce clause violation is barred by the statute of limitations.  Both parties agree that the relevant statute of limitations for the § 1983 claim in Count I is four years.  (D.E. No. 54 at 5); (D.E. No. 58 at 1); *see also Fla. Transp. Serv., Inc. v. Miami-Dade County*, 543 F. Supp. 2d 1315, 1322 (S.D. Fla.

---

[3]Defendant also argues that summary judgment should be granted on Count I because it was actually Ordinance 00-01, not Ordinance 95-4 or 95-5, which caused him to go out of business and this ordinance does not violate 1983 or the dormant commere clause.  The Court finds it unnecessary to reach this argument as it finds summary judgment is appropriate as to Count I based upon the statute of limitations.

2008) (finding that the applicable statute of limitations for a § 1983 dormant commerce clause violation was four years).  The parties, however, disagree as to when this statute of limitations began to accrue and as to how accrual is determined.  Plaintiff argues that the statute of limitations did not begin to run until his injury was complete in mid-2003 when he closed down his business. In contrast, Defendant argues that, at the latest, the statute of limitations began to run on March 1, 2000 when Plaintiff stopped operating his buses due to Defendant's enforcement of Ordinance 00-01, which in turn enforced the franchise agreements with Conch Tour Train and Buggy Bus codified in Ordinances 95-4 and 95-5.  The Court finds Defendant has correctly interpreted the law and calculated the time that Plaintiff's action began to accrue.

"While federal courts borrow state statutes of limitations for section 1983 actions, a determination of when the federal cause of action accrues-that is, comes into existence-is governed by federal standards." *Corn v. City of Lauderdale Lakes*, 904 F. 2d 585, 588 (11th Cir. 1990).  Section 1983 actions begin to accrue when a plaintiff "knows or has reason to know that he has been injured" and "the plaintiff is aware or should have been aware [of] who has inflicted the injury."  *Mullinax v. McElhenney*, 817 F. 2d 711, 716 (11th Cir. 1987).

Plaintiff filed suit on August 25, 2005,[4] seeking damages for Defendant's enforcement of municipal ordinances, specifically Ordinances 95-4 and 95-5, enacted in February 1995, which Plaintiff alleges gave former Defendants Conch Tour Train and Buggy Bus a monopoly to conduct shuttle and land-based sightseeing tours in Key West. In this case, Plaintiff knew or had reason to know that he had been injured and should have been aware that it was Defendant who inflicted the injury by at least March 1, 2000 when he ceased operation of his shuttle bus service.

---

[4]The case was removed to this Court on September 7, 2005.  *See* (D.E. No. 1).

Plaintiff ceased operation of his buses after Defendant's denial of his application for a franchise on February 15, 2000. Plaintiff sought a franchise agreement with the City pursuant to Ordinance 00-01, but was denied this franchise because of the exclusive agreements with Conch Tour Train and Buggy Bus as stated in Ordinances 95-4 and 95-5. When Plaintiff ceased operation of his shuttle bus service, he suffered injury in that his business became smaller and less profitable. (D.E. No. 56-5 at 12); (D.E. No. 58-2 at 5). Thus at this point, Plaintiff knew or should of known that he had a complete and present cause of action as he could have "file[d] suit and obtain[ed] relief." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997).

The Court finds that Plaintiff's argument that the statute of limitations did not begin to run until he decided to completely stop operating his business to be without merit. "'Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.'" *Wallace v. Kato*, 127 S. Ct. 1091, 1097 (2007) (quoting 1 C. Corman, Limitations of Actions § 7 .4.1, pp. 526-27 (1991)).[5] As the Supreme Court has stated "[w]ere it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 127 S.Ct. at 1097.

The Court also finds Plaintiff's argument that the violation alleged in Count I is a continuing violation for purposes of the calculation of the statute of limitations is without merit.

---

[5]Section 1983 creates a "species of tort liability." *Memphis Comty. School Dist. v. Stachura*, 477 U.S. 299, 305 (1986) (internal quotation marks omitted).

"Under the continuing violations doctrine, the statute of limitations is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period." *Nat'l Oaks & Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F. 3d 1316, 1322 (11th Cir. 2007). "In determining whether to characterize a violation as 'continuing,' it is important to distinguish between the 'present consequences of a one-time violation,' which do not extend the limitation period, and 'a continuation of a violation into the present,' which does." *Id*. (quoting *Ross v. Buckeye Cellulose Corp*., 980 F. 2d 648, 658 (11th Cir. 1993)). Here, all of the alleged harassment and incidents are consequences of the constitutional violations which occurred when Defendant enacted Ordinances 95-4 and 95-5 in 1995 and when Defendant denied Plaintiff's application for a franchise on February 15, 2000, which itself is a consequence of the enactment of the unconstitutional ordinances. This is not an example of a continuing violation. *See, e.g.*, *Nat'l Advert. Co. v. City of Raleigh*, 947 F. 2d 1158, 1168 (4th Cir. 1991) (holding no continuing violation when ordinance's enactment caused the harm even though city later took later enforcement action and stating that "[t]his is not an instance of a statute's repeated enforcement against different individuals or even the same parties, but of a statute applied once to a discrete set of individuals with a foreseeable, ascertainable impact.").

In addition, there is no evidence in the record to establish a genuine issue of material fact as to a continuing violation. Specifically, Plaintiff argues that the acts which constituted a continuing violation include: "(1) citing and stopping his vehicles; (2) detaining his passengers; (3) falsely telling his clients that his business was 'illegal;' (4) amending the regulatory ordinance; (5) refusing to grant Plaintiff a franchise; and (6) refusing to consider Plaintiff's buses to be within the stream of commerce." (D.E. No. 58 at 13). As discussed above, the incidents Plaintiff

is describing in numbers four, five, and six occurred in 2000 and are still barred by the statute of limitations. *See Seacoast Sanitation Ltd., Inc. v. Broward County, Fla.*, 275 F. Supp. 2d 1370, 1377 (S.D. Fla. 2003) (stating that "[t]he continuing violation doctrine does not render the applicable statute of limitations irrelevant" and noting that plaintiff could only recover damages that occurred within the statute of limitations). With regard to the incidents in numbers one, two, and three, Plaintiff has provided no dates within the relevant time frame that these incidents occurred, and he has failed to demonstrate how the citing and stopping of his vehicles are causally connected to the violation of his constitutional rights.

First, Plaintiff argues that he received baseless or invalid citations and that his vehicles were improperly stopped. However, Plaintiff has not provided any specific dates within the four years before this suit was filed that his vehicles were stopped or that citations were issued. Nor has he detailed what he was cited for during this time period or why he believes such citations were baseless or invalid. Defendant has offered affirmative evidence, which Plaintiff has not disputed, that none of the citations offered to Plaintiff after August 1, 2001 were for violations of Ordinances 95-4 or 95-5. *See* (D.E. No. 59-3 at 2); (D.E. No. 59-3). Thus, even if Plaintiff had provided specific dates within the four year period, it is unclear what causal connection such citations or stops have to the violations of Plaintiff's rights under the commerce clause. Plaintiff's conclusory statements and vague references to citations being issued until he ceased to operate his business in 2003 are not sufficient to defeat summary judgment. *See Sun v. Girardot*, 237 Fed. Appx. 415, 417 (11th Cir. 2007) (stating that "[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment.").

There is also no evidence that Plaintiff's passengers were detained or told that Plaintiff's business was illegal in the four years before this action was filed. Plaintiff testified in his deposition that on June 10 of 1998 or 1999 his drivers and passengers were detained by Monroe county deputies who announced that the "city code enforcement people" were telling them Plaintiff's business was illegal. (D.E. No. 56-3 at 17-18). Plaintiff also testified that in 1999 or 2000 a city police officer pulled over one of his buses with thirty elderly passengers and detained them. (D.E. No. 56-4 at 36). Both of these events occurred more than four years before this action was filed and cannot create a genuine issue of material fact. As stated above, Plaintiff's conclusory allegations that Defendant continued to detain his drivers and passengers and generally interfere with his business until 2003 is also not sufficient to create a genuine issue of material fact. *See Sun*, 237 Fed. Appx. at 417. Thus, even if this Court were to find that Plaintiff has demonstrated a continuing violation, he has not presented any evidence that would create a genuine issue of material fact that the violations continued into the relevant time period. Thus, the Court grants Defendant's motion for summary judgment as to Count I.

### B.    Case and Controversy and Counts II and III

Finally, with respect to Plaintiff's claims in Counts II and III, the Court finds these claims are moot. In Count II, Plaintiff alleges conspiracy in restraint of trade in violation of section 542.18, Florida Statutes, and in Count III, Plaintiff alleges conspiracy to monopolize in violation of section 542.19, Florida Statutes. Plaintiff seeks injunctive relief on these claims asking for

> permanent injunctive relief enjoining . . . [Defendant] from continuing to engage in the anticompetitive and unlawful conduct alleged above; enjoining the City from enforcing Ordinances 95-4 and 95-5; and requiring . . . [Defendant] to take affirmative steps to dissipate and remedy the effects of their prior violations.

(D.E. No. 5 at 19).[6]  Defendant argues that because Plaintiff seeks only injunctive relief Plaintiff has no viable claim in Counts II and III because a permanent injunction has already been entered in *Duck Tours Seafari, Inc. v. City of Key West*, enjoining Defendant from enforcing the provisions of Ordinances 95-4 and 95-5, which gave Conch Tour Train and Buggy Bus a monopoly.  Plaintiff does not dispute that such a permanent injunction is already in force nor does he dispute that the City has and is complying with this injunction.  *See* (D.E. No. 59-2 at 3).  Plaintiff, however, argues that this Court's "equitable powers extend well beyond simply enjoining a repetition of the illegal conduct."  (D.E. No. 58 at 16).  Thus, Plaintiff argues that these claims are not moot because the Court could compel Defendant to take affirmative remedial steps "'to cure the ill effects of the illegal conduct.'"[7] *Id*. (quoting *United States v. United States Gypsum Co.*, 340 U.S. 76, 88-89 (1950)).  This Court agrees with Defendant and finds these claims are moot.

"Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir. 1984).  Here it is undisputed that Defendant has already been permanently enjoined by the state court in accordance with Plaintiff's request for relief in his Amended Complaint.  Moreover, Plaintiff has not alleged nor offered evidence of any "present real and immediate threat of repeated injury."  Thus, the Court finds there is no case and controversy remaining as to Counts II and III.  *See e.g.,*

---

[6]Plaintiff may not receive actual damages for these claims.  *See* Fla. Stat. § 542.235(2) (limiting Plaintiff's recovery under sections 542.18 and 542.19 to declaratory or injunctive relief).

[7]Plaintiff never specifies exactly what these affirmative steps should be.

*Cmty. Care Bossier, Inc. v. Foti*, 228 Fed. Appx. 444, 445 (5th Cir. 2007) (dismissing appeal of claims for injunctive relief where "[a]t oral argument, counsel for CCB revealed that it had already received much of the injunctive relief it sought in a parallel state court proceeding"). Where there is a threat of injury and there is a case and controversy, there are circumstances where a Court could require a defendant to take certain affirmative actions. However, as there is no threat of injury and there is no case or controversy, this Court grants summary judgment as to Counts II and III. Accordingly, it is hereby:

    **ORDERED AND ADJUDGED** that

    1.    Defendant, City of Key West's Motion for Summary Judgment **(D.E. No. 53)** is **GRANTED**. Final Judgment shall be entered in a separate order.

    2.    Plaintiff's Motion for Partial Summary Judgment **(D.E. No. 50)** is **DENIED as MOOT**.

    3.    This Case is **CLOSED** and all pending motions are **DENIED** as **MOOT**.

    DONE AND ORDERED in Chambers at Miami, Florida, this 25 day of November, 2008.

    _____
    JOSE E. MARTINEZ
    UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record